Garry A. SCARABELLO, individually and on behalf of all others similarly situated, Plaintiff,

v.

Gregory C. REICHLE, Richard G. Reichle, Sr., Richard G. Reichle, Jr., Reichle & Associates, Inc., and American Wilbert Vault Corp., Defendants.

No. 93 C 4606.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 28, 1994.

---

Michael B. Roche, L. Andrew Brehm, Schuyler, Roche & Zwirner, Edward T. Joyce, Chicago, IL, for plaintiff.

Thomas P. Ward, John P. Ryan, Lorijean G. Oei, McBride Baker & Coles, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Defendants' Motion for Summary Judgment and Defendants' Motion to Strike the Class Action Allegations.

### FACTS

The following facts are uncontested.[1] Between March of 1959 and September of 1991, approximately two hundred stockholders sold shares of American Wilbert Vault Corporation ("AWVC") back to the company in separate transactions, each at a price of $100 per share. (Plaintiff's Rule 12(n) Statement at 2 ¶ 2.) Since 1973, all AWVC stockholders who inquired about the possible sale of their shares dealt with Gregory C. Reichle, the president and chief executive officer of AWVC. *Id.* at ¶ 3. In cases involving the sale of unrestricted shares, the stockholder usually inquired about the price at which AWVC would redeem the shares and Gregory Reichle replied that AWVC would pay one hundred dollars per share. *Id.* at ¶ 4. When asked whether there was a market for AWVC shares, Gregory Reichle told the inquiring stockholder that he was unaware of any other interested buyer. *Id.*

Most stockholders who inquired about selling their shares did subsequently agree to sell at the price of one hundred dollars per share. *Id.* at 3 ¶ 5. AWVC acquired no shares at a price other than one hundred

---

1. The Court notes that many of the responses in Plaintiff's Rule 12(n) statement neither admit or deny the statements made in Defendants' Rule 12(m) statement. Rather, Plaintiff simply states that he does not have sufficient information to ascertain the truth or falsity of particular assertions made in Defendants' Rule 12(m) statement.

Rule 12(n) states in pertinent part, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Thus, for the purposes of this motion, all statements which are not controverted by the Defendant will be deemed admitted. *See, Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir.1992) (upholding the district court's strict application of Rule 12(n).)

dollars per share prior to September 1991. *Id.* The book value of AWVC's shares between 1959 and September 1991 was substantially greater than one hundred dollars per share. *Id.* at 4 ¶ 8.

The parties agree that no stockholder who inquired about selling his shares to AWVC asked Gregory Reichle for any information about the financial condition of the company, including the book value per share, the fair value, the market value or for any of AWVC's financial statements, stockholder lists or other records. *Id.* at ¶ 6. However, Plaintiffs assert that if any minority stockholder had requested AWVC's financial information, their requests would have been denied. *Id.* at 14–15 ¶¶ 16–17. The parties disagree as to whether AWVC at its annual meeting offered all attending stockholders a copy of AWVC's condensed financial statements and whether from these statements a shareholder could calculate the book value per share.

Plaintiff Gary Scarabello ("Plaintiff") acquired twenty-six shares of AWVC along with his purchase of a Chicago area funeral home in 1986. *Id.* at 6 ¶ 11. Plaintiff never attended a stockholders meeting nor did he ever request a balance sheet, profit and loss statement or a stockholders list from AWVC. *Id.* at 7 ¶ 12. On July 20, 1989, the Plaintiff sent by registered mail the certificate representing his twenty-six AWVC shares with a request to be paid $2600. *Id.* at ¶ 13. On July 21, 1989, AWVC sent Plaintiff a check for $2600 and transferred the twenty-six shares to the AWVC treasury. *Id.*

AWVC's board of directors adopted a plan on August 9, 1989 to liquidate one of AWVC's subsidiaries. *Id.* at 8 ¶ 14. The prospective buyer and AWVC began discussing the sale of the subsidiary as early as August 1988. *Id.* In August 1990, AWVC paid a special dividend of two hundred and twenty-five dollars per share attributable to the sale of the subsidiary. *Id.*

On July 30, 1993, more than four years after the sale of his twenty-six shares of AWVC, Plaintiff filed the Complaint in this action. Four of the counts in Plaintiff's Complaint allege various violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* According to the Plaintiff, the Defendant failed to disclose to minority stockholders that the fair value of AWVC stock was well in excess of one hundred dollars per share. Thus, Plaintiff argues that the Defendants engaged in fraudulent conduct which violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b–5.[2] Plaintiff asserts further that Defendants' "fraud in the sale of securities" is a "racketeering activity" actionable under RICO. *See,* 18 U.S.C. § 1961(1)(D).

The remaining three counts of Plaintiff's Complaint state claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), common law fraud (Count VI), and breach of fiduciary duty (Count VII).

In support of their Motion for Summary Judgment, Defendants make two arguments. First, Defendants assert that the premise underlying the Plaintiff's action is faulty. Contrary to Plaintiff's assertions, Defendants argue that when a corporation's board of directors receives an unsolicited request to redeem corporate shares, it is under no duty to bid "fair value." Consequently, Defendants claim that they have not participated in a course of fraudulent conduct by failing to disclose to minority stockholders that the fair value of AWVC stock was well in excess of one hundred dollars per share. Second, Defendants argue that Plaintiffs RICO claims are barred by the statute of limitations.

## ANALYSIS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hughes v. Derwinski,* 967 F.2d 1168, 1171 (7th Cir.1992). Sum-

---

**2.** Section 10(b) and Rule 10b–5 make it unlawful to misrepresent or fail to disclose material information in connection with the purchase or sale of securities. *See,* 15 U.S.C. § 78j(b) (1982); 17 C.F.R. 240.10b–5 (1984).

mary judgment shall be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The showing made by the non-moving party must be more than merely colorable. Summary judgment is appropriate "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**Duty to Offer Fair Value**

Both parties agree that corporations do not have an affirmative duty to determine and offer fair value when purchasing stock from minority shareholders. However, Plaintiffs assert that, although a corporation's redemption of its shares at an unfair price may not be per se actionable, such a purchase is fraudulent where the corporation fails to disclose material facts in connection with the particular transaction.

Plaintiffs rely principally on three cases for the proposition that closely-held corporations and their officers, directors and controlling shareholders have a duty to disclose all material facts when purchasing stock from minority shareholders.

At least two of these cases involve the application of the "special facts" doctrine. *See, Jordan v. Duff and Phelps, Inc.,* 815 F.2d 429 (7th Cir.1987); *Michaels v. Michaels,* 767 F.2d 1185, 1194–1197 (7th Cir. 1985). The "special facts" doctrine is based on the principal that "insiders in closely held firms may not buy stock from outsiders in person-to-person transactions without informing them of new events that substantially affect the value of the stock." *Jordan,* 815 F.2d at 434–435.

In *Michaels,* the Seventh Circuit held that a closely held firm must disclose material information to investors from whom it pur-

chases stock. 767 F.2d at 1194–1197. In *TSC Industries Inc. v. Northway Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), the Supreme Court determined the standard for materiality. According to the *TSC Industries* court, materiality contemplates "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable shareholder."

Applying the *TSC Industries* standard of materiality, the *Michaels* court held that a jury could reasonably find that an agreement to contact prospective buyers on behalf of the company was material information which the company officers had a duty to disclose before purchasing company stock from a minority shareholder. 767 F.2d at 1197–1198.

Relying on *Michaels,* the Seventh Circuit in *Jordan v. Duff and Phelps, Inc.,* 815 F.2d 429, 435 (7th Cir.1987) stated that "[c]lose corporations buying their own stock, like knowledgeable insiders of closely held firms buying from outsiders, have a fiduciary duty to disclose material facts." The *Jordan* court held that a jury might reasonably find material a company's decision to seek a buyer for the company coupled with a negotiator's estimate that the company was worth fifty million. *Id.* at 434–435.

Unlike the plaintiffs in *Jordan* and *Michaels,* the Plaintiff in the present case does not allege that the Defendants failed to disclose a special material fact such as an agreement to locate a purchaser for the company.[3] Rather, the Plaintiff asserts that the Defendants breached their fiduciary duty when they failed to disclose basic information affecting the value of AWVC shares. According to the Plaintiff, "basic information" includes the book value of the stock, the nature of the business, the economic outlook of the industry, the earnings capacity of the company, the possible goodwill of the company and the market price of the stock. (Plaintiff's Response at 12 n. 11, citing *Superior Invest-*

---

**3.** For reasons unknown to the Court, Plaintiff does not argue that Defendants breached their duty to disclose material facts by not informing Plaintiff that AWVC was negotiating the sale of one of its subsidiaries. Negotiations for the sale

of a subsidiary suggest a special circumstance and thus allegations of a failure to disclose such negotiations would have been more appropriately analogized to the facts of *Jordan* and *Michaels.*

*ment & Development Corporation, Inc. v. Devine,* 244 Ill.App.3d 759, 185 Ill.Dec. 168, 175, 614 N.E.2d 302, 309 (1st Dist.1993)). Essentially, Plaintiff argues that the Defendants, confronted with a minority shareholder's desire to sell, had a fiduciary duty to automatically provide the shareholder with information from which the shareholder could determine the fair value of the stock. The Court does not believe that either *Jordan* or *Michaels* stands for such a proposition.

 The Court recognizes that other laws may obligate a company, upon request, to provide financial information to its shareholders. *See,* Illinois Business Corporation Act, 805 ILCS 5/7.75(e). However, the Court notes first, that the Plaintiff never requested any materials regarding the value of the stock. (Plaintiff's Rule 12(n) statement at 7 ¶ 12.) Second, and more importantly, the fiduciary duty owed to minority stockholders does not include a duty to automatically reveal materials regarding the value of the stock when the minority shareholder expresses a desire to sell. Such materials must be provided to a minority shareholder upon request, and thus such materials do not constitute special facts known only to the controlling shareholder because of his unique position. Consequently, this Court holds that Defendants failure to provide information regarding the value of AWVC's stock, at the time the Plaintiff expressed his desire to sell, does not constitute a material omission giving rise to fraud in the sale of securities. As Defendants' actions do not constitute fraud in the sale of securities, Plaintiff has not alleged a predicate act of racketeering under RICO, and thus Defendants are entitled to judgment as a matter of law.

*Kohler v. Kohler Co.,* 319 F.2d 634 (7th Cir.1963), the third case on which Plaintiff relies, further supports this Court's proposition that an officer of a corporation, confronted with a minority shareholder's desire to sell, does not have a fiduciary duty to automatically provide the shareholder with information from which the shareholder can determine the fair value of the corporation's stock. The plaintiff in *Kohler* contended that the defendants violated Section 10(b) and Rule 10b–5 by not fully and accurately disclosing all material facts concerning the value of the stock. 319 F.2d at 636. The defendants hired an accountant to negotiate the sale and the accountant agreed, upon the plaintiff's request, to provide the plaintiff with the statistical data the accountant had used in projecting the value of the stock. *Id.* at 637.

The *Kohler* court held that the duty imposed by special circumstances "requires the insider to exercise reasonable and due diligence not only in ascertaining what is material as of the time of the transaction but in disclosing fully those material facts about which the outsider is presumably uninformed and which would in reasonable anticipation affect his judgment." *Id.* at 642. Applying the legal doctrine to the facts of the case, the *Kohler* court stated that neither the accountant's failure to volunteer his data work sheet nor his failure to offer details regarding the accounting method used constituted a breach of his fiduciary duty even though revelation of such data or the use of a different accounting method might have increased the book value of the stock. *Id.* at 640. The *Kohler* court explained that honesty and fair dealing did not require the accountant to disclose to the minority shareholder his guesswork regarding the value of the stock. *Id.*

Likewise, this Court holds that honesty and fair dealing did not require the Defendants, in response to the Plaintiff's expressed desire to sell, to automatically provide the Plaintiff with financial information concerning the value of AWVC stock. Such financial information was readily available to the Plaintiff upon request, and thus was not a material fact of which only the Defendants had knowledge due to their unique positions.[4]

In addition to *Jordan, Michaels* and *Kohler,* Plaintiff cites a number of cases applying Illinois law to support his argument that the Defendants breached their duty to disclose material information when purchasing stock from minority shareholders.

---

4. The Court addresses below the Plaintiff's assertion that the Defendants would not have provided the financial information even if the Plaintiff had requested it.

First, this Court notes that Section 10(b) and Rule 10b–5 impose their own fiduciary duties on controlling stockholders in closely held firms. State court decisions involving fraud and misrepresentation are applicable only indirectly as supplementary aids in establishing due diligence. *Kohler,* 319 F.2d at 642. In *Kohler,* the Seventh Circuit stated,

Congress has established its own standard which is to be measured by federal law in interpreting the statute and the rule unhindered by restrictive applications of state common law.

319 F.2d at 642. Second, this Court determines that Illinois state law addressing fraud and misrepresentation reinforces the Court's holding that a controlling shareholder's fiduciary duty does not encompass the obligation to automatically reveal financial information regarding the stock's fair value when purchasing shares from a minority shareholder.

In *Guy v. Duff & Phelps, Inc.,* 672 F.Supp. 1086, 1090–1091 (N.D.Ill.1987), the court held that where a controlling shareholder purchases, from a minority shareholder, shares for the corporation, he has a fiduciary duty to disclose special circumstances. The *Guy* court relied on *Northern Trust v. Essaness Theatres Corp.,* 348 Ill.App. 134, 108 N.E.2d 493, 497 (1952). In *Northern Trust,* the court held that a managing officer breached his fiduciary duty to the company's shareholders when he purchased stock from them without informing the shareholders of negotiations involving the company's purchase of another theater. The *Northern Trust* Court noted that the managing officer "took advantage of his secret information to conclude an unconscionable bargain with a stockholder." *Id.*

Financial information from which a minority shareholder could compute the fair value

of AWVC's stock does not qualify as secret information known only to the officers. It is uncontested that Defendant provided financial statements to shareholders who attended the annual shareholder meeting. (Plaintiff's 12(n) Statement at 4 ¶ 8). The financial statement was essentially a balance sheet and income statement which reported, among other things, stockholder's equity. (Reichle Affidavit, Exhibit 1.) The number of outstanding shares was also announced at the annual shareholder's meeting and recorded in the minutes of the meeting. (Reichle Affidavit, Exhibit 2.)

The parties agree that Plaintiff never attended a shareholders meeting. *Id.* at 7 ¶ 12. Moreover, it is uncontested that the Plaintiff never requested a balance sheet, a profit and loss statement, or a stockholders list.[5] *Id.* Given the undisputed facts, this Court concludes that a shareholder could compute the book value, and thus estimate the fair value of AWVC's stock from available information. As this Court holds that the Defendant, upon the Plaintiff's expressed desire to sell, did not have a fiduciary duty to automatically provide the Plaintiff with information from which he could estimate the fair value of the stock, Plaintiff cannot argue that the Defendants' actions constitute fraud in the sale of securities. Without a racketeering activity, Plaintiff's RICO claim must fail. Accordingly, the Defendants are entitled to judgment as a matter of law.

### Statute of Limitations

■ RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision. *Agency Holding, Corp. v. Malley–Duff & Associates,* 483 U.S. 143, 145, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987). In *Agency Holding,* the Supreme Court determined that civil RICO

---

**5.** Contrary to Plaintiff's contentions, the Court does not find that there is a material issue of fact as to whether the Defendants would decline to provide AWVC's financial statements if requested. The fact that Defendants refused to allow its principal competitor to inspect AWVC's books and records even though the competitor owned six shares of AWVC stock does not give rise to the inference that Defendants would have refused Plaintiff's or any other shareholder's request for financial statements or a shareholder list.

The Circuit Court, Chancery Division upheld the Defendants' refusal to provide their competitor with AWVC's books because the court found that the competitor's request to inspect AWVC's books was motivated by an improper purpose. (Reply Brief, Appendix A.) More importantly, the Circuit Court noted that the Defendants did provide their competitor with financial statements and shareholder lists. *Id.* at 8–9, 13.

enforcement actions should be subject to a uniform statute of limitations borrowed from the most analogous statute, the Clayton Act (15 U.S.C. § 15b). Thus, a four-year statute of limitations applies to civil RICO actions.

In *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464 (7th Cir.1992), the Seventh Circuit determined the accrual rule for RICO civil enforcement actions. The statute of limitations begins to run once there is a RICO violation and the plaintiff knew or should have known that he was injured. *Id.* Once the Plaintiff knew or should have known of his injury, the RICO claim accrues even if the plaintiff has not yet discovered the pattern of racketeering. *Id.* at 1465.

The Plaintiff filed his Complaint on July 30, 1993. Plaintiff sold his twenty-six shares to the Defendants on July 20, 1989. (Gregory Reichle's Affidavit ¶ 19(D).) Defendants argue that the Plaintiff should have known of his alleged injury—that he received less for the stock than what it was worth—at the time of the sale because all of the information necessary to calculate the book value was available to the Plaintiff upon request. Thus, Defendants conclude that under the accrual rule adopted by *McCool*, Plaintiff's claim is barred by the statute of limitations unless he is entitled to apply the doctrine of equitable tolling.

In response, Plaintiff argues that he should not have known of his injury until he learned in August 1990 that AWVC had paid a special dividend of two hundred and twenty-five dollars per share. Consequently, Plaintiff concludes that his claim is not barred by the statute of limitations.

The Defendants cite *Davenport v. A.C. Davenport & Son Co.*, 903 F.2d 1139 (7th Cir.1990), *overruled on other grounds, Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990) [6] in support of their proposition that Plaintiff should have investigated the available financial materials and thus known of the injury at the time of sale. In

*Davenport*, the plaintiff argued that in connection with her stock redemption, the defendants engaged in a scheme to defraud her of the true value of her interest in the company.

As to the Plaintiff's securities fraud claim, the *Davenport* court held that under the doctrine of equitable tolling, two types of behavior will toll the running of the statute of limitations, (1) the plaintiff's due diligence in attempting to discover the fraud and (2) the defendant's active concealment of the fraud. *Id.* at 1142. The plaintiff in *Davenport* could not toll the statute due to her diligence because her complaint contained no allegations that she made inquiries to determine the "true value" of the stock she sold. *Id.* Barring the securities claim, the *Davenport* court noted that an objectively reasonable person would have appreciated the need for further inquiry prior to 1984 when the company was sold for a substantial price. *Id.* In addressing the plaintiff's RICO claims, the *Davenport* court merely noted that the discussion of equitable tolling applies with equal force to the plaintiff's RICO claim. *Id.* at 1143. The *Davenport* court did not address the accrual rule for RICO actions. Thus, it seems the *Davenport* court held that plaintiff's lack of due diligence and failure to inquire into the value of the stock caused her RICO claim to accrue because she would have discovered the alleged injury had she made a reasonable inquiry. Plaintiff's lack of due diligence and failure to inquire also prevented application of the doctrine of estoppel.

From *Davenport*, the Defendants conclude that where a plaintiff alleges RICO violations based on the sale of stock for a price below value, the due diligence a plaintiff must show to toll the statute and the duty of care a plaintiff must meet to delay the accrual of the action is the same. This Court agrees.

With regard to the accrual rule for RICO civil enforcement actions, *Davenport* instructs that when a person contemplates the

---

6. In *Short*, the Seventh Circuit held that federal, not state, law supplies the statute of limitations in suits under Section 10(b) and Rule 10b–5. According to *Short*, Section 13 of the Securities Act of 1933 requires actions dealing with materially misleading statements or omissions to be brought one year from discovery and in no event more than three years from the date of sale. 908 F.2d at 1390–1391.

Equitable tolling does not extend the period of limitations by more than the two year grace period allowed by Section 13. 908 F.2d at 1391.

sale of his stock back to the corporation, he should engage in a reasonable inquiry to determine the fair price. If after a reasonable inquiry, the seller should have known of the alleged injury, that he was receiving less for the stock than what it was worth, then the cause of action accrues at that date of sale. However, if after a reasonable inquiry, the seller should not have known of the alleged injury, then he can postpone the accrual of the cause of action.

The Plaintiff suggests that reading *Davenport* to require a seller of stock to engage in a reasonable inquiry conflicts with *McCool.* This Court disagrees. In *McCool,* the Seventh Circuit stated, that a RICO claim accrues when a plaintiff discovers her injury even if she has not yet discovered the pattern of racketeering. 972 F.2d at 1465. The *McCool* court continued that the doctrine of equitable tolling may further extend the limitations period while "a victim diligently investigates the possible existence and extent of a pattern of racketeering." *Id.*

*McCool* and *Davenport* read together suggest that in a RICO action a claim accrues when plaintiff knew or should have known of the injury and whether plaintiff should have known of the injury may, in some instances, turn on whether a reasonable person in the same circumstances would have engaged in further inquiry. After the claim accrues, equitable tolling may further extend the statute of limitations if, despite all due diligence, Plaintiff was able to discover the injury but not the pattern of racketeering.

■ Plaintiff should have known of the alleged injury, that he received less for the stock than what it was worth, on the date of sale since a reasonable inquiry would have revealed that the book value of AWVC's stock was substantially greater than one hundred dollars per share. Plaintiff counters that, even if he had made a reasonable investigation, the investigation would not have revealed that AWVC's stock was worth more than one hundred dollars per share, and thus the Court cannot conclude that the Plaintiff should have known of the alleged injury at the time of sale. As mentioned above, it is undisputed that at the annual shareholders meeting, the Defendants announced the number of outstanding shares, recorded the number of outstanding shares in the minutes and reviewed AWVC's balance sheet and income statement. (Reply, Exhibit 1 and 2.) The minutes of the meeting and the balance sheet and income statement would have been provided to any shareholder who requested such information. (Reply, Exhibit B at 3; Reply, Exhibit A at 8–9 and 13.) Thus, a reasonable inquiry clearly would have revealed that the AWVC's stock's book value exceeded one hundred dollars per share.

Plaintiff's cause of action accrued on the date he should have known of the injury—the date of sale. Plaintiff has presented no materials which suggest due diligence or concealment, and thus this case does not merit application of the doctrine of equitable tolling to further delay the running of the statute. Consequently, the Court holds that Plaintiff's RICO claims are barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is granted. Defendants' Motion to Strike the Class Action Allegations is denied as moot.